The next matter on our calendar is Christine Panzella v. Michael Sposato and others. Thank you. Good morning. May it please the Court, Robert Van de Weck, County Attorney's Office, representing the Sheriff of Nassau County. This is a situation that's only rather recently come to this stage. The Sheriff in his normal course as an officer of the family court in the domestic disputes, which are handled quite often in the family court, is given a temporary order of protection or whatever to serve on, in this particular case, the plaintiff. And the Sheriff and his deputies serve that. And during the course of that, discovered that the plaintiff had two shotguns, two long arms. There may have been other weapons as well. The Sheriff keeps the long arms. Thereafter, he's advised that the temporary order of protection is vacated when . . . At that point, why didn't they return her guns? Say again, Judge? At that point, when they're informed that the temporary order of protection is vacated, why don't they return her guns? The policy of the Sheriff is that notwithstanding the naked vacating of the order of protection . . . Okay. So, there's a policy. First, I don't understand why you say you're representing the Sheriff because the Sheriff got qualified immunity. So, he won. So, I don't know what you're saying to us on appeal. The county, however, is here on appeal because a 1983 action against them was held to be valid . . . because there was a policy, which retained these things, these long arms, after there was no reason to retain them. So, why wasn't the court below correct to say that this violates procedural due process . . . because there is no adequate procedure for this guy to get his guns back? Well, the county's position is the procedure is for the person requesting the return . . . But, there's no matter pending in the family court. They can't just do a free-floating order. Well, that's the problem, Judge, because it turns out, as you know, that subsequent to the normal events . . . we have the anomaly where the alloy matter and what have you. The courts have said that there's this anomalous situation in which a family court judge can issue an order of protection . . . but he or she cannot . . . If there is an anomalous situation in which there isn't a hearing, there isn't a procedure . . . other than Rule 78 thing, which is so cumbersome and with a burden of a wrong party . . . why isn't it exactly a violation of procedural due process? And, why wasn't the court below exactly right in saying, set up a procedure? Well, the court went beyond that and directed the sheriff to hold a due process hearing. Yes, to hold a hearing, so that of a sort, which would allow this person to get his guns back. But, the sheriff has no facilities to hold a hearing, unlike the police departments. There is no one within the sheriffs, unlike the police, who hold hearings, administratively, quasi-judicial, whatever the case may be. That isn't the federal court's problem. The federal court can say the procedure is lacking and can say to the defendant county . . . not to the sheriff, but to the defendant county, set up a hearing. And, that's what the district court said. The hearing has to be a hearing that allows this person to come and say, there is no reason now, why you're holding my guns. Give them back to me. If that's the sole purpose and the end result of the hearing, we already know the answer. The sheriff has no knowledge indicating beyond what you just said. The injunction was not against the sheriff, but against the county. Yes, your . . . So, it doesn't make a difference if the sheriff had facilities or not. It was the county that was ordered to hold this hearing. But, the . . . well, I don't know how to answer you to the extent that the sheriff is indicated, via the deputy sheriff, that they have no such facilities. They have no knowledge of . . . That's irrelevant. There is no order against the sheriff. Okay. The order is against the county. And, I don't understand why you keep talking about the sheriff, who won. Because, he is not the subject of anything, given that he was granted qualified immunity. A policy was there. You admitted it. That, therefore, means that Monell lies. And, Monell lies against the county. And, there is no qualified immunity to the county. And, the order runs to the county to set up a hearing. Well, we also indicated that the . . . based upon the initial finding, that the judge could issue the order. Because, the judge now has all the information that anyone in the county has. Why do you need a hearing? And, if this judge issues that order, or if we issue that order, we then leave in place a policy that we have held is procedurally unconstitutional. And, it is our job to tell you that if there is a policy which is procedurally unconstitutional, you have to do something about it, regardless of whether we order these guns to be given back at this time. May I simply add that to the extent that the order predicated on the prior proceeding in the Rosano case, which found, as you said, that is totally different in that the police were the ones who made the initial determination as to a danger. And, they could review circumstances to determine whether it still exists. We are not in that position. Can I ask a more practical question? Yes. Why do you need an order to return the guns? Say again? Why do you need an order to return the guns? The position of the county heretofore was that with this dangerous situation, holding guns emanating from . . . Well, dangerous because a court ordered that there was an order of protection in place against the woman who owned the guns. Correct. That order is vacated. There's now no order. There's no dangerous situation anymore. Why don't you give the guns back? For whatever it's worth, the vacating of the order was subsequent to the seizure and . . . I understand that. But, now there's no reason for you to hold them. Do you have a lost and found? Well, if . . . Do you have a lost and . . . Does the sheriff have a lost and found? Say again, Judge? Does the sheriff have a lost and found? A lost . . . I'm sure they do. And, if somebody comes in and says, I've got something, you don't need a court order to give it back, do you? Yes. You do need a court order? No, you don't need a court order. Okay. So, let me ask you this. When the sheriff seized the guns, there was no court order requiring him to seize the guns in this case, right? Well, the temporary order of protection recites various things, including what . . . But, it doesn't say seize the guns. There's a place they can check off . . . No, that's true. You can check off on the form, seize these guns, and that's not checked off on this form, right? Well, there was no check off on this form that was signed. So, he didn't have an order requiring him to seize the guns, and yet he seizes them. Well, it's been . . . that was always done . . . Right. . . . following the family court . . . But, he can't return the guns without a court order. That's the way it has been, yes, and now we know that, for whatever reason, the second department has said the family court judge can't do anything beyond what he or she did. Would you agree with me that it makes no sense that he can seize the guns without a court order, but he can't return them without a court order? I don't know whether I can concede it. I find it to be a situation that is different. Let me just . . . I don't know whether I can concede that, Judge. Let me just cut in that if you do not want to give a hearing, you can always change this rather remarkable policy and just say we give it back. If a hearing is too much trouble for you, you can change that, but you can't have it both ways. You can't give the guns back and have no hearing by which the person is given due process. One or the other has to be . . . I understand, Judge, but may I just leave you with one very important thought as far as the county is concerned. The situation when we deal with long arms or pistols or whatever and domestic disputes and so forth, the county or whatever municipality must be scrupulous as to what happens. There are unfortunate situations where those weapons can and have been used for very serious repercussions and therefore . . . Of course. We have to be scrupulous. That's why the question of whether there is to be a hearing or not is an important one. In this case, it is rather remarkable because this guy can go out and buy new guns. He can have handguns. You've given him back his handgun license. It is a quite unusual situation . . . It is. I don't quite know how . . . I understand what you're saying. We've also analyzed it similarly, but the ability to go out and buy another gun and what have you is not going to relieve the potential liability on the county if that particular gun is given back in what turns out to be an improper or dangerous situation. That's the way I would like to leave it. Thank you. You have reserved two minutes for rebuttal. Thank you. We'll hear from Mr. Baradola. Thank you. Your Honor, I respectfully request two minutes rebuttal time as well. As an appellee. Ordinarily, the appellee doesn't get two minutes of rebuttal. Yes. So, the answer is no. Okay. Very good, Your Honor. Let me proceed then. Your Honor, I just wanted to make clear that the way Judge Spad envisioned the hearing . . . I'm reading from the Rosano decision. Third, at the hearing, Nassau County shall have the burden of showing that it is likely to succeed in court on a cause of action, presumably forfeiture, or a cause of action seeking an order of protection. Although the court does not limit Nassau County to these theories, to maintain possession of seized long arms. In other words, the way the hearing was envisioned, the rule is to return them according to the Family Court Act return policy, which we cited to. There never was a legislative glitch. The Family Court has a return policy. It's stated. It's Family Court Act 842A5B. It explains exactly the process followed throughout every county in the state. Judge Fierstein had us do a survey and report back to her what every other county in New York State is doing. And they cited their following. They stated . . . It isn't our job to tell the county what its policy must be. That is its job. Our job is to say whether that policy, as it is administered, violates due process in a 1983 action. What the district court said is it isn't for me to say whether that's a sensible policy or not. But if you have a policy of that sort, you must have in place a procedure by which the guy can get his gun back. You know, I might think this is the silliest policy in the world, but unless it's unconstitutional, you don't come to me. Exactly so, Your Honor. And it was Judge Asrock who cited to the Crimstock hearing and the Crimstock case, which, of course, is a very familiar way where the default would be to return the property. Most of these cases, by the way, involve ex parte orders of protection, which are done without the other side even being there in the five that I've named in our potential class so far, and in temporary orders of protection. So I don't believe we have any cases right now that are involving an expired order of protection. These are cases that are decided in 30 to 60 days. One spouse goes to the family court, makes an ex parte statement. The sheriff will go out and take the guns. Whatever the order says, whether the order said remove or not remove, they're taking them. That's been made clear. And then the property, and then win or lose, at the actual return date of that hearing, they keep everything. The pistols are being returned post-Rosano. That was a problem, but that's not happening. They are returning the handguns. And now, as people are becoming more and more aware, thanks to the Internet, that the policy is not proper, they're contacting my office or other offices and finding out, yes, I can actually go out and buy another firearm. Yes, Your Honor. So, Counselor, you want us to confirm that portion of Judge Azraq's decision that either said return the guns or get a hearing, right? Yes. What else do you want us to do? Your Honor, we have a class of members out there of people that are being sent to my office by the sheriff every few months, more and more since this was decided, where they're saying we need to be ordered to return these things back. And until the law is changed or until the policy changes, they're calling my office. Well, won't that first part of that decision, affirming Judge Azraq's decision that they get a hearing or the guns back, accomplish that? If the county treats it as a class action, it should. No, but you didn't ask for a class. You were asked to proceed to make this a class action, and you didn't. No, I made several. So we don't have a class action before us now. That is definitely true, Your Honor, but I made several motions for class certification, and in each case, Judge Feirstein and Judge Azraq asked us to convert the county's motion to dismiss to a motion for summary judgment. Then I moved for class certification. Judge Feirstein denied it at that time. She wanted to decide the motion on the merits. She tried to settle and settle, as did the other judges, Judge Chen, Judge Azraq, have all been involved. And basically, we don't have a certified class, but that is part of my appeal. But if you don't have a certified class, we can't act as if we can give a judgment in this case, and the judgment in this case presumably will be followed. There's no reason to think that it will not. You moved for class status? Yes, twice. Was that denied? No. The judge just indicated that she wanted to deal with the summary judgment motion first, and then denied it with leave to renew. So that is still an option in this case. It's still out there. So we don't have anything to say about the class status. So let me go back to my question. What else do you want us to do? I mean, you have a cross appeal, right? I do. What's the basis of the cross appeal? What are you asking us to do on that cross appeal? There are two points I'd like to make on the cross appeal. This is an unusual case where qualified immunity has been granted to the law enforcement officers. But I attach to the record, just so it's clear to everyone, that these individual officers, Master Pierre, have been involved in hearings where they have been named since 2003. And judge after judge, and I cited the quotes, have been ostracizing them, stating somebody ought to sue you and somebody ought to sue the county to them individually again and again. It's a little unusual. So they can't claim that they were ignorant of the rights of the person from whom they took guns? Yes, Your Honor. And that, coupled with the fact that Rosano was against the county, I don't believe we should have to sue the county twice to enact a return policy. Rosano is different, though. Rosano is taking the guns without any hearing whatsoever, right? Yes. In this case, there's a family court hearing, and there is an order that says you can take the guns. There should be. There isn't in this particular case or others. But the order says you can't have guns, right? The order basically says in general terms you can't possess weapons. No. It doesn't. In this case, no. What they've been citing, too, is underneath the signature line in the temporary order of protection, the ex parte form, there's some general language which cites the federal law, the Lautenberg amendments that say it is a crime to possess a firearm. There is this federal policy statement that it is wrong, perhaps a crime, to hold guns when you are under an order of this sort of a family court. Now, why doesn't the existence of that federal policy suffice to make a reasonable police officer or some reasonable police officer be in doubt? Because, Your Honor, that does not apply until after the hearing date. These are cases where there's an ex parte order and a temporary order of protection, but the Lautenberg amendment, which is cited below, is after the injunction is issued, which is none of these cases. You say that the federal policy does not apply until after? Yes. That's the due process element, Your Honor, the hearing. Counsel, do we have jurisdiction over any issue beside the injunction? Yes, Your Honor, the second amendment claim, which I'd like to just raise here after the New York State Rifle and Pistol Association matter v. Cuomo. I think we have a matter here that seriously under intermediate scrutiny set forth in that case would apply because the county has known since all of these Article 78 cases in 2003, judge after judge has admonished individuals. Why is this chilling anybody? Your client was able to get other guns, has gotten them, and why if we simply do what the court below did, even assuming something that has never been decided, that chilling applies to the second amendment as it does to the first amendment. Yes. But even assuming that it does, why does it apply in this case when the result is going to be that somebody, he got his guns and people in the future will be able to? Because this is a unique situation where the sheriff is acting without court authority, confiscating guns under an actual confiscation plan. The counsel stated it's their plan that when they go out, they take the guns, whether they're ordered to or not. I think that's very, very unusual. So that's why I invoke the second amendment claim. There's an actual confiscation policy in New York which the county has enacted. There's no one else doing it. Now, that affects everything. It certainly affects the guns in my client's case. She has a picture of her father holding a rabbit with the shotgun. These are very old guns. These are hunting guns. So they deprive your client of her property interest in those guns. They don't deprive her of the right to bear arms. She can go out and buy another gun. They don't explain that to anyone since there's no return policy. She knew it, though. She knew it. She says she knew it. She submitted an affidavit, page 196 of your joint appendix, where she says the sheriff told her simply go buy new firearms. She says that. Yes, Your Honor. He does tell her to go buy new firearms, but she's under the belief because of this lack of return. She also stated in that affidavit they all state the same thing. He didn't tell me how to get my things back, and she was under the belief. But the Second Amendment has never been held to give a person the right to a particular firearm. And as she said in her affidavit, she can get another firearm of a very same type. There's a difference between her possessory interest in these firearms and her right to bear arms generally, and I don't see how this infringes on the right. I understand how it infringes on her possessory interest in these firearms. I don't understand how it affects her right to bear arms generally. Judge, I understand that concern exactly, and I've had, as I say, people coming into my office, all of whom are under the belief that they can't possess anything. Now, it is true that after her guns were confiscated by the sheriff that she was told go buy new ones, but that's not much of a balance when we're looking at the Second Amendment. If we feel that it does apply in the intermediate level scrutiny, then we have to look at the encumbrance. And is this a reasonable encumbrance to say you can go buy something else, but we're keeping these? Maybe somebody else, but this isn't yet a class action, and this particular person sent an affidavit saying she knew she could get other firearms. So how is her Second Amendment in jeopardy? Her possessory interest is. And that we've been pretty much agreeing with you. Your Honor, I understand, but I also understand that under this circuit's decision, which analyzed this in great detail, that there's a balancing. So we know that there is a restriction on this right taking place in Nassau County. It's very clear that they're taking everything when they go out. That's their policy. So the question is, judged against that policy, what is the reasonableness of that policy? Yes, she was told you can go buy something else, yes, after the guns were taken. There was nothing given to her in writing, nothing on the website, nothing indicating whether or not she's free to get any of her property back. But I'll tell you, she knew when she got her pistol back and her pistol license, she could get another gun, and there's something very, very wrong. By the way, when you emphasize the county's policy, you're making your argument on qualified immunity much weaker because you are asking the individual sheriffs to go against the policy of the county. And, you know, in terms of how an individual cop is going to be held personally liable when all they are doing is following a policy which may be an improper policy, but to hold the individual cop liable when they're just doing what they're told that they must do, would be, I think, going against the very reason we have qualified immunity. If I may just speak to that very briefly, Your Honor, my argument on that focuses on the objective reasonableness of their belief. Now, certainly after Rosanna was decided, it's no longer objectively reasonable that they can just keep property indefinitely. There was the case of Canavan that we refer to where the sheriffs did the same thing involving confiscated cars, and they were auctioning cars before Dewey cases went to criminal court, and then people were finding that the cases were dismissed and their car was sold. So we've got a history of this in Nassau County where public officials say, well, my lawyer is telling... Nevertheless, I asked you do we have jurisdiction. This is not a final order except for the injunction. Is that correct? That is exactly correct. And did you bring an appeal on the denial of class certification? No, because it's also not a final order, Your Honor. It's still something that may be granted down the road. But there's a time limit in which you have to bring that appeal that has long elapsed. They haven't denied it, as I said, Your Honor. So that will be something that the judge indicated to be brought at a later date. And so I'm still confused about what you're asking us to do. What did Judge Azraq decide that you are appealing from? What is it? A final order. And what in that final order is adverse to you? The two parts of my cross appeal relate to the Second Amendment denial of that portion of the claim and to the qualified immunity argument, which we feel... You just admitted that you didn't bring an appeal from the denial of class certification. I did not. You didn't bring it timely. No, Your Honor. Your Honor, the court below has indicated that that matter, that class certification matter, is still to be decided at a later time. Then by definition, not a final order. Yes, Your Honor. So that you can't appeal it. Isn't that correct? Not today, Your Honor. So the only thing you want to preserve is the injunction. Isn't that correct? We want to preserve the injunction, and we're asking on the cross appeal to consider the two matters that I raised. To what? The Second Amendment argument and the qualified immunity argument. Okay, but you just admitted that there's no final order on the Second Amendment, therefore it's not ripe for adjudication by this panel. Oh, no, Your Honor. The Second Amendment claim was dismissed. My Second Amendment claim was dismissed, so that is before the court. Oh, what was not dismissed? Only... Was the class action? Yes. Okay. Thank you very much. Thank you, Your Honor. We'll hear from the county on rebuttal. And let me ask you before you get started. Is the only thing before us the injunction? Yes. May I also just respond that the class action petition was denied. There's been no appeal from that. That's what I thought. And by Judge Feuerstein, just a couple of things, if I may, as far as to the extent of the Second Amendment and why that's really effective. This woman's been represented by Mr. Labradoro and what have you. She certainly knows what's going on. I, like Judge Calabresi, believe that any such claim is totally meritless. But is that before us? No. I'm trying to figure out what is before us. Is an appeal from the dismissal of the Second Amendment claim before us? Just as a matter of jurisdiction. Is that before us? As far as what Mr. Labradoro, of course, appealed on? It's not a question of whether it's good or bad. I just want to know whether it's before us. I can't answer that question. Mr. Labradoro, that's his appeal. I don't see that it is properly appealed. It was never argued anywhere in this case on the appeal. Yeah, but there's no particular jurisdictional issue why that is not before us. How about the denial of the granting of qualified immunity? Is that properly before us? I think that's part of his appeal. So I think it is before you. And I would rely at a minimum on Judge Azraq's analysis and why she granted it. And I would concur in that. Why doesn't Dudek and then the state law cases that he cites give you plenty of notice that you should be returning the guns? Well, Dudek, first of all, Dudek, the analogy of Dudek is on Rosano. And we, as we argued in what have you, Rosano is a totally different situation than what we're dealing with here. Dudek is the same situation as here, right? Very similar. Yeah, and Dudek said give the guns back or give him a hearing, right? Well, I don't know whether, you know, Judge Chen, you know, said that the sheriff had authority, but it's intimated, but it's not the holding, and we would disagree that the sheriff had the authority. But court after court after court is telling you you need to give these guns back when the order of protection is lifted. Isn't that plenty of notice that what you're doing is unconstitutional? Well, these were all litigation at the same time. In other words, these cases, which would be Dudek, Panzella, and I think there are two others, are all awaiting the decision of this court. It's all happening at the same time and what have you. Well, a better argument you might make is that this isn't a case where the order of protection has abated, but where it simply was lifted because a party took things, a party said I don't want to keep it there, and that might be a situation of danger of a different sort. That might be a better argument. And why do you argue, counsel, that the injunction has to be lifted, the injunction to hold a hearing? Am I asking that? Yes. Well, we have argued that the county is incapable of holding a hearing because it does not have sufficient knowledge to make a determination. However, we have practically suggested that the sheriff could do that, and quite frankly, Judge Azraq could issue an order, and in fact, she suggested it. But she ordered the county, not the sheriff, to hold the hearing. Yes. All right. Thank you. We'll reserve decision on this interesting case.